**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **Frank C. Puglia,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **Genband Holdings Company,** | § | **CIVIL ACTION NO. _____** |
| **Genband Management Services Corp.,** | § | |
| **Genband US, LLC** | § | |
| **(f/k/a Genband Inc.).** | § | |
| *Defendants*. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff Frank C. Puglia ("Puglia") and files this, his Original Complaint against Defendants Genband Holdings Company, Genband Management Services Corp., and Genband US, LLC (f/k/a Genband Inc.), ("Genband" or "Defendants") concerning certain grievances arising under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621. In support thereof Plaintiff respectfully states as follows:

### I. JURISDICTION AND VENUE

1.      This Court has jurisdiction to hear the merits of Plaintiff's claims under 28 U.S.C. §§ 1331, 1343(a)(4), and 29 U.S.C. § 626.

2.      Venue is proper in this district under 28 U.S.C. § 1391.

### II. PARTIES

3.      Plaintiff is a male over the age of 40 years old.

4.      Defendant Genband US, LLC is a foreign limited liability company registered and doing business in the state of Texas and can be served with process through its registered agent

for service, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

5.       Defendant Genband Management Services Corp., is a Delaware corporation and affiliate of Genband LLC, doing business in the state of Texas at 2801 Network Blvd. #300, Frisco, TX 75034. Defendant can be served with process through its President and CEO Charles Vogt at 3605 E. Plano Pkwy., Plano, TX 75074.

6.       Defendant Genband Holdings Company is the parent company of Genband Management Services Corp., and a Cayman Islands exempted company limited by shares. Defendant can be served with process through its President and CEO Charles Vogt at 3605 E. Plano Pkwy., Plano, TX 75074.

### III.  FACTUAL BACKGROUND

7.       Defendants Genband et al., is a global leader of IP infrastructure and application solutions, enabling fixed, mobile and cable service providers around the world to evolve. In addition, the company offers market-leading Switching, Applications, Networking and Service solutions, with products deployed in over 600 customer networks spanning more than 80 countries. Genband has operations in 50 countries and is based in Frisco, Texas, with its headquarters located at 2801 Network Boulevard, Suite 300, Frisco, TX 75034. Genband has over 600 local employees, 2200 in the U.S., and approximately 3000 worldwide.

8.       Genband et al., is an "employer" within the meaning of 29 U.S.C. § 630(b) and TEX. LAB. CODE § 21.002(8).

9.       Frank Puglia is currently sixty years old.  Genband terminated Puglia when he was fifty-nine years old. Puglia began working for Genband in February 2008 and provided three years of outstanding service to Genband before being terminated on March 18, 2011.

10.    Puglia began employment with Genband as a Senior Director of Corporate Marketing and Communication whose responsibilities included, but were not limited to, company branding, advertising, analyst and public relations, trademarks, all external communications, and directly supervising six people.

11.    During Puglia's tenure with Genband, Defendants recognized his excellent performance with the company by evaluating his performance as "Outstanding" every year Puglia was employed by the company (2008-2010). Puglia's performance was so impressive that Genband awarded him with an "out of cycle" salary increase of $10,000 on June 11, 2010.

12.    Based on this "Outstanding" performance, Genband made Puglia an Equity Partner of the company on October 28, 2010. Puglia was one of approximately 30 employees out of 2,200 in the United States and 3,000 worldwide who was offered equity partnership.

13.    Despite this "Outstanding" performance, Puglia had hit the glass ceiling for an older employee at Genband. There would be no more recognition or opportunity for advancement for Puglia. During his tenure with Genband, Genband subjected Puglia to a hostile work environment towards older employees.

14.    Shortly after joining Genband, Mehmet Balos (Chief Marketing Officer and Puglia's boss) began showing discriminatory age bias towards Puglia, telling Puglia that he "was lucky to have a job" as the market was bad "out there" and he was "not getting any younger."

15.    Shortly after that, Balos began pressuring Puglia to provide him personal loans, something Balos did not require from younger workers. On March 25, 2008, Balos "asked" for the first of thirteen separate loans, telling Puglia, "I don't know what to do. Can you help me? You know I have to make it here. There are no jobs. No headhunters have called me. It is really bad. I will pay you back. You need to be happy here because you have a job and you are not a

young guy anymore." After Balos implied to Puglia that his job could be in jeopardy, Puglia gave him a loan for $750.

16.     Puglia earned an "Outstanding" performance review for his efforts in 2008. In early January 2009, Balos informed Puglia that he would promote him to a VP position after an upcoming Sales Meeting, but that the meeting needed to be exceptional. Executives and employees alike informed Puglia that the Sales Meeting he produced was exceptional. 17.Puglia approached Balos concerning his promotion to VP after the Sales Meeting but Balos brushed him off. Puglia again followed up with Balos several weeks later, but Balos told Puglia, "Business is not good." Puglia asked to be promoted to Vice President throughout the course of his tenure with Defendants, but every time, Balos would make an excuse and insinuate that Puglia should just be thankful to still be employed. During this period, Genband gave VP Positions to several younger, inexperienced, under-qualified new hires and internal candidates.

18.     In February 2009, Balos asked for his second loan in the amount of $1,000.

19.     Balos made another statement implying that Plaintiff was becoming too old to be productive at Genband on Puglia's birthday (May 24, 2011), stating, "I forgot how old you are getting. Maybe you won't have it (what it takes) much longer."

20.     On or about July 22, 2009, Balos coupled his third request for a loan of $1,000 with a threat. While simultaneously asking for money, Balos made the derogatory statement that "You look nervous, what is wrong? You have these little nervous ticks. You need to watch it. People will notice. You look uncomfortable. Why do you do this? Maybe it is your age?"

21.     In addition to the first three loans, Balos threatened and pressured Puglia into giving him ten more separate loans, one of $1,200 during the holiday season:

| Date Balos requested Loan | Loan Amount |
|---|---|
| 1.  3/25/2008 | $750 |
| 2.  2/30/2009 | $1,000 |
| 3.  7/22/2009 | $1000 |
| 4.  10/14/2009 | $600 |
| 5.  12/7/2009 | $1,200 |
| 6.  3/15/2010 | $500 |
| 7.  3/28/2010 | $1,400 |
| 8.  4/20/2010 | $1,000 |
| 9.  5/10/2010 | $200 |
| 10. 6/1/2010 | $300 |
| 11. 6/15/2010 | $2,000 |
| 12. 8/10/2010 | $700 |
| 13. 2/1/2011 | $2,000 |
| **TOTAL:** | **$13,050** |

22.      In addition to the comments by his boss Balos, several younger Genband executives commented about the company being young and implied that Puglia was old and had "been around a long time."   These younger executives made age baised statements to Puglia including "

•      Genband is a young company.

•      You've been around the industry, I can see that.

•      How many companies have you worked for?

•      Yeah, you are up there.

During his tenure with Genband, Genband discounted the value of diligent work from older workers and subjected them to a hostile work environment.

23.      Despite the hostile work environment, Puglia continued to add innovations to the company. In September 2010 he delivered the first ever analyst and media meeting for Genband and received rave reviews. Due to his innovations and excellent performance, Genband promoted Puglia to Equity Partner in the company and transferred him from Genband, LLC to Genband Management Services Corporation (a subsidiary of Genband Holdings Company).

24.     In January 2011, Genband gave Puglia the primary responsibility for producing Genband's Annual Sales Meeting. Puglia again delivered an exceptional performance. Numerous attendees conveyed to Puglia that it was the best sales meeting they had ever attended, anywhere. A survey and feedback forms confirmed these comments. Genband CEO Charlie Vogt personally complimented Puglia on his work. On February 28, 2011 Vogt told Puglia. "Frank, the Sales Meeting was unbelievable. It was fantastic. You are doing a great job." Vogt also stated, "I have to get you on the President's Circle trip." The "President's Circle" is an annual "invitation only" trip that is reserved for high achievers.

25.     On March 4, 2011, after Puglia's continued and recent success, Puglia made a final attempt to discuss promotion to the Vice President position with his boss Mr. Balos. Balos responded to Puglia by telling him that he was not young and hip enough for the position, that Puglia was not "smooth enough" to be Vice President, and that he had a "few little quirks."

26.     On March 18, 2011, as an emphatic "no" to his request for promotion to Vice President, Genband management (CMO Mehmet Balos and VP of Human Resources Sean Huurman) informed Puglia, without prior warning, that he was being terminated.

27.     At the termination meeting Balos stated to Puglia, "We are letting you go, we are terminating you.  Your performance is outstanding. but the executive management team feels you are not the right person for this job long term." Huurman added that there was no other reason. Huurman said, "There is nothing else. This has been brewing for some time. The management team feels you are not the right person we need in this role long term." Huurman's words are evidence that Genband was looking for someone younger than 59-year-old Puglia, someone who could remain in the position longer than Puglia in light of Puglia's old age.

28.     As Puglia was leaving the building after the termination meeting, Huurman placed a six page "Separation Agreement" into one of Puglia's boxes. The document stated that the company would pay him a certain amount of money if Puglia agreed to release his rights to pursue a lawsuit against Genband for claims including age discrimination in employment.

29.     The alleged reason for Plaintiff's termination, "not (being) the right person for this job long term," is pretextual as shown by substantial evidence. Among other evidence of pretext, Balos had promised promotion to Puglia.   In addition, Puglia demonstrated "Outstanding" performance during his entire tenure, something that Balos even recognized during the termination meeting. Defendants demonstrated age bias by firing Plaintiff despite his Outstanding performance so it could give the position to a younger employee long term. Defendants demonstrated age bias by showed preference to younger employees for promotions and top positions.

30.     Plaintiff timely filed an EEOC charge of discrimination for age discrimination and retaliation on April 1, 2011.   More than sixty days have elapsed since Puglia filed his EEOC charge.

## IV. CAUSES OF ACTION

**Age Discrimination**

31.     Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 1 through 30 as if fully stated herein.

32.     Plaintiff has satisfied all jurisdictional prerequisites in connection with his claims under the ADEA.

33.     Defendants' actions, including but not limited to the ultimate termination of Plaintiff, were undertaken because of Plaintiff's age.   These actions constitute a willful,

continuing violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.*

34.     Due to Defendants' actions, including but not limited to Plaintiff's ultimate termination, Plaintiff has suffered, and continues to suffer, damages including but not limited to lost wages, both past and future and the value of company stock and other fringe benefits.

35.     Defendants' actions referenced in paragraphs 1 through 30 were willful, entitling Plaintiff to liquidated damages under the ADEA.

36.     Defendants' actions referenced above in paragraphs 1-30 have caused Plaintiff to retain the services of the undersigned counsel in order to pursue his federal rights in this action. Plaintiff seeks his reasonable attorneys' fees and costs in this matter.

## V. PRAYER

WHEREFORE, Plaintiff, respectfully requests that the above-named Defendants, Genband, et al, be cited to appear in this matter and that, after bench trial by proof, Plaintiff be awarded:

a.      Judgment against Defendants for lost wages and benefits, both back pay and front pay;

b.      Judgment against Defendants ordering Defendants to take such other reasonable actions as may be necessary to remedy the effects of Defendants' violation of 28 U.S.C. § 621, *et seq.*;

c.      Judgment against Defendants for liquidated damages under 28 U.S.C. § 621, *et seq.*, as amended;

d.      In the alternative to front pay, judgment against Defendants reinstating Plaintiff to his position of employment, equivalent position of employment, or the position of employment he would have enjoyed but for the discrimination, if reinstatement is deemed feasible;

e.      Pre-judgment interest at the appropriate legal rate on all amounts awarded;

f.      Interest after judgment at the appropriate legal rate on all amounts awarded until paid in

full;

g.      Judgment against Defendants for Plaintiff's reasonable attorneys' and experts' fees;

h.      Costs of suit; and

i.      Such other and further relief to which Plaintiff may justly be entitled.


                              Respectfully submitted,

                              GILLESPIE, ROZEN & WATSKY, P.C.
                              3402 Oak Grove Avenue, Suite 200
                              Dallas, Texas 75204
                              Phone: (214) 720-2009
                              Fax: (214) 720-2291



Dated: June 28, 2011          By:     /s/ Hal K. Gillespie
                                    Hal K. Gillespie
                                    ATTORNEY-IN-CHARGE
                                    State Bar No. 07925500
                                    Adam S. Greenfield
                                    State Bar No. 24075494