# EXHIBIT A

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | AGENCY<br>☐ FEPA<br>☐ EEOC | CHARGE NUMBER |
|---|---|---|

| Texas Commission on Human Rights and EEOC | |
|---|---|
| *State or local Agency, if any* | |

| NAME *(Indicate Mr., Ms., Mrs.)*<br>Mr. Frank C. Puglia | HOME TELEPHONE *(Include Area Code)* |
|---|---|

| STREET ADDRESS | CITY, STATE, AND ZIP CODE | DATE OF BIRTH |
|---|---|---|

**NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME** *(If more than one list below.)*

| NAME<br>GENBAND et al -- See Attachment A | NUMBER OF EMPLOYEES, MEMBERS<br>2200 | TELEPHONE *(Include Area Code)*<br>(972)521-5800 |
|---|---|---|

| STREET ADDRESS   CITY, STATE, AND ZIP CODE<br>2801 Network Boulevard, Suite 300, Frisco, TX 75034 | COUNTY<br>Collin |
|---|---|

| NAME | TELEPHONE *(Include Area Code)* |
|---|---|

| STREET ADDRESS   CITY, STATE, AND ZIP CODE | COUNTY |
|---|---|

| CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))*<br>☐ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☒ AGE<br>☒ RETALIATION ☐ NATIONAL ORIGIN ☐ DISABILITY ☐ OTHER *(Specify)* | DATE DISCRIMINATION TOOK PLACE<br>EARLIEST(ADEA/EPA)   LATEST(ALL)<br>June 5, 2010   March 18, 2011<br>☐ CONTINUING ACTION |
|---|---|

THE PARTICULARS ARE *(If additional space is needed, attach extra sheet(s))*:

I. **PERSONAL HARM:**
   See Attachment A

II. **RESPONDENT'S REASON FOR ADVERSE ACTION:**
    See Attachment A

III. **DISCRIMINATION STATEMENT:**
     See Attachment A

*[EEOC Dallas District received stamp: 2011 APR -1 P 3]*

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct.<br><br>4-1-2011<br>Date (Signature) *[signature]* Charging Party | SIGNATURE OF COMPLAINANT<br>*[signature]*<br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, Month, and Year) |

EEOC Form 5 (10/94)

1

PUG 000003

# ATTACHMENT "A"

Frank C. Puglia

### Re: Frank C. Puglia v. Genband

**NAME OF EMPLOYER**

The Employer who hired, failed to promote me, and terminated me when I was seeking promotion is GENBAND, a joint employer and an integrated enterprise. The various companies within this joint employer/integrated enterprise are:

1. GENBAND Holdings Company, the parent company of GENBAND Management Services Corp;

2. GENBAND Management Services Corp;

3. GENBAND US LLC (f/k/a GENBAND Inc.).

**THE PARTICULARS ARE:**

**PERSONAL HARM:**

GENDBAND, Inc. (GENBAND) hired me in February 2008 as Senior Director of Corporate Marketing and Communication. In this position I supervised six people and I was responsible for company branding, advertising, analyst and public relations, trademarks and all external communication. During my tenure with the Defendant I received an "Outstanding" performance evaluation every year – for 2008, 2009 and 2010.

Shortly after I joined the company, my boss, Mr. Mehmet Balos, told me the job market was bad "out there," and that I "was lucky to have a job." Mr. Balos also told me, "You are not getting any younger."

On or about March 25, 2008, Mr. Balos asked me for a loan. Mr. Balos said, "I don't know what to do. Can you help me? You know I have to make it here. There are no jobs. No headhunters have called me. It is really bad. I will pay you back." Balos added, "You need to be happy here because you have a job and you are not a young guy anymore." After Balos expressed to me that my job was in jeopardy, I gave him a loan for $750.

During my employment, GENBAND discounted the value of diligent work from

2

older workers and subjects them to a hostile work environment. Several younger executives told me that "GENBAND is a young company." GENBAND emphasized that it only perceived value in employees who were both young and actively contributing to the company. A few of my coworkers even said to me: "You've been around the industry, I can see that." "How many companies have you worked for?" "Yeah, you are up there." The ages of the coworkers who made these statements ranged from late 30's to mid 40's.

In early January 2009, Mr. Balos told me he would promote me to VP after the upcoming Sales Meeting, but that the meeting needed to be exceptional. I produced a highly successful annual Sales Meeting, and executives and employees told me the Sales Meeting I produced was exceptional. I asked Mr. Balos after the Sales Meeting in late January 2009 if he would promote me to Vice President soon, but he brushed me off.

I followed up with Mr. Balos about my promotion several weeks later. Mr. Balos said, "Business is not good."

Throughout the course of my tenure with Defendant, I asked to be promoted to Vice President (a promotion Mr. Balos had promised me back in mid-January 2009). Every time, Mr. Balos would make an excuse and insinuate that I should be thankful to still be employed. During this period, GENBAND gave Vice President Positions to several, younger, inexperienced, under qualified new hires and internal candidates.

In February 2009, Mr. Balos asked me for a second loan. On information and belief Mr. Balos did not require younger workers to give him loans to keep their jobs or pressure them about their age in order to make them give him loans.

My birthday is on May 24. Mr. Balos showed animus toward me because of my age shortly after my birthday 2009. Mr. Balos told me, "I forgot how old you are getting. Maybe you won't have it (what it takes) much longer." Mr. Balos implied that I was becoming too old to be productive at GENBAND.

On or about July 22, 2009, Mr. Balos asked for another loan of $1,000. Mr. Balos again threatened me by making a derogatory statement about my age while simultaneously asking for more money. He said, "You look nervous, what is wrong? You have these little nervous ticks. You need to watch it. People will notice. You look uncomfortable. Why do you do this? Maybe it is your age?"

After that, Mr. Balos continued to threaten me and ask for additional loans. On October 14, 2009, Mr. Balos asked for $600 and I yielded to his pressure.

During the holiday season when most people are spending money on loved ones, Mr. Balos demanded a $1,200 loan on December 7, 2009. Again I yielded to his pressure.

In March 2010 Mr. Balos pressured me into giving him two more loans: $500 on March 15, 2010 and $1,400 on March 28, 2010.

3

Mr. Balos also borrowed $1,000 on April 20 and $200 on May 10, 2010.

On June 11, 2010, due to my outstanding performance, I received a salary increase of $10,000 per year.

In June 2010 Mr. Balos pressured me into giving him two more loans: $300 on June 1, 2010 and $2,000 on June 15, 2010.

On August 10, 2010, Balos pressured me into giving him a loan of $700.

Despite the hostile work environment, I continued to add innovations to the company. In September 2010 I delivered the first ever analyst and media meeting for the company and received rave reviews.

On October 28, 2010 I was made an Equity Partner of the company. This was a prestigious honor as only a small number, approximately 30 out of 2,200 employees were offered equity partnerships.

In January 2011, I had primary responsibility for producing GENBAND's Annual Sales Meeting. I delivered an exceptional event and I received feedback from numerous attendees that it was the best sales meeting they had ever attended, anywhere. GENBAND CEO Charlie Vogt personally complimented me on my work.

On February 1, 2011 Mr. Balos pressured me into giving him another $2,000 loan. By February 2011 Mr. Balos had borrowed a total of $13,050 from me in 13 loans. GENBAND did not require younger, less qualified employees to make loans to their superiors to remain employed.

On February 28, 2011, the President and C.E.O. of GENBAND, Mr. Charles D. Vogt told me, "Frank, the Sales Meeting was unbelievable. It was fantastic. You are doing a great job." Mr. Vogt also stated, "I have to get you on the President's Circle trip." The "President's Circle" is an annual "invitation only" trip that is reserved for high achievers.

On March 4, 2011 I again discussed promotion to Vice President with my boss, Mr. Balos. I knew by this time that Mr. Balos and GENBAND were hostile to older management employees and preferred younger employees for promotions, hiring, and top positions. I felt that I had a right to press for promotion to Vice President, a position I was qualified for and had actually be promised by Mr. Balos, despite my age. My effort to obtain promotion, despite my old age that Mr. Balos kept reminding me of, was protected activity under the federal and state age discrimination laws. Mr. Balos told me that he did not think I was "smooth enough" to be Vice President and that I had a "few little quirks." I understood "smooth" to mean that I was not young and hip enough for the position. I responded that apparently my former employer, Ericsson thought I was smooth enough to be master of ceremonies for their national sales meeting in front of several hundred people. Mr. Balos said, "Well, how do you think you are

4

perceived by Sean Huurman and Charlie Vogt?" Mr. Huurman was the Vice President of Human Resources, and Mr. Vogt was the President and C.E.O.

**RESPONDENT'S REASON FOR ADVERSE ACTION:**

On March 18, 2011, GENBAND management informed me that I would not be promoted and that instead I was being terminated. This was GENBAND's way of dealing with my request for a promotion and to effectuate its age discrimination agenda. Rather than promoting me when I deserved promotion, the answer to my persistence in seeking promotion was – you are fired. The termination came without any prior warning. Mr. Balos and V.P. of H.R. Sean Huurman told me of my termination. At my termination meeting, Mr. Balos said, "We are letting you go, we are terminating you. Your performance is outstanding but the executive management team feels you are not the right person for this job long term."

I asked, "What is the reason again? There must be something else. What else is behind this?" Mr. Huurman replied, "Nothing else. This has been brewing for some time. The management team feels you are not the right person we need in this role long term." The reference to "long term" was a direct reference to my age. But for my age (almost 60), with my outstanding performance, I would have been a great fit for my job and the Vice President's position long term. Mr. Huurman was telling me that the person who would fit my job was a young person who could remain in the position longer than I could in light of my old age, a perception of my age that Mr. Balos had directly stated to me repeatedly and in a negative, age biased manner.

As I was leaving the building, Mr. Huurman placed a 6 page document that was labeled, "Separation Agreement" into one of my boxes. The document stated that the company would pay me a certain amount of money if I agreed to release my rights to pursue a lawsuit against GENBAND for claims including age discrimination in employment. I did not sign the document.

I was 59 years old at the time of my termination and about 2 months from my 60th birthday. On information and belief, I have been replaced by younger former coworkers who are now handling my job duties.

**DISCRIMINATION STATEMENT:**

I believe that I was discriminated against when GENBAND refused to promote me and terminated my employment because of my age in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.*, and the Texas Commission on Human Rights Act, TEX. LABOR CODE § 21.001, *et seq.*

Frank C. Puglia

5

I declare under penalty of perjury that the foregoing is true and correct.

Signed on this 1st day of April, 2011.

By: _____
Frank C. Puglia

SUBSCRIBED AND SWORN TO BEFORE ME, on this 1st day of April, 2011, to certify which witness my hand and official seal.

_____
Notary Public, State of Texas

ANGELINA G. CHAIREZ
MY COMMISSION EXPIRES
August 30, 2014

ANGELINA D. CHAIREZ
Printed Name of Notary

My Commission Expires:
8/30/14

6